Oscar L. HEINRICH, Plaintiff and Appellee,

v.

NORTH DAKOTA STATE HIGHWAY COMMISSIONER, Defendant and Appellant.

Civ. No. 890251.

Supreme Court of North Dakota.

Dec. 20, 1989.

Steven Francis Lamb, Asst. Atty. Gen., State Highway Dept., Bismarck, for defendant and appellant.

Darold A. Asbridge, P.C., Bismarck, for plaintiff and appellee.

GIERKE, Justice.

This is an appeal by the North Dakota State Highway Commissioner (Commissioner) from a district court judgment reversing the Commissioner's suspension of Oscar L. Heinrich's (Heinrich) driving privileges for 91 days as a result of a driving while under the influence charge. We reverse.

Heinrich was arrested by Lt. Al Fischer of the Mandan Police Department on February 11, 1989, for driving while under the influence. After transporting Heinrich to the Mandan Law Enforcement Center, Lt. Fischer conducted an intoxilyzer test on him. The test indicated that Heinrich had been operating his automobile with a blood-alcohol content in excess of ten one-hundredths of one percent by weight in violation of Section 39–08–01(1)(a), N.D.C.C. Heinrich was issued a temporary driver's license and was notified of the Commissioner's intention to suspend his driver's license. Heinrich submitted a timely request for an administrative hearing.

At the administrative hearing, one of the arguments Heinrich raised was that Lt. Fischer, a trained and certified intoxilyzer operator, conducted the intoxilyzer test improperly. Heinrich argued that Lt. Fischer did not accurately fill out all of the handwritten information that is to be written on the test record form 106–I prior to the form's insertion into the intoxilyzer machine. Apparently, Lt. Fischer had erroneously written the standard solution number twice on form 106–I prior to insertion into the intoxilyzer machine. Lt. Fischer wrote the standard solution number once in its proper space and once in the space provided for the simulator number. After completing the test on Heinrich, Lt. Fischer realized his mistake and corrected it by crossing out the standard solution number that he had mistakenly written in the space for the simulator number, and inserting the simulator number in the proper space.[1]

Heinrich premised his argument on the following language from the North Dakota State Toxicologist's approved method for conducting a breath test with an intoxilyzer: "Testing Procedure: All available information on the Form 106–I from the name of the subject through the operator's number, should be filled in prior to the test."

Thus, Heinrich argued that since Lt. Fischer's correction of his error occurred after the testing procedure, the intoxilyzer test was invalid. The Commissioner did not agree with Heinrich's argument concluding that he did "not believe that writing and then correcting information on the test form affected the procedure or the test results." However, the district court reversed the Commissioner stating that Lt. Fischer's post-test form correction was a deviation from the approved method. The district court held that the hearing officer's finding that the deviation did not affect the test result was not supported by evidence from the State Toxicologist. Consequently, Heinrich's driving while under the influence charge was reversed. This appeal followed.

■ The sole issue to be decided on this appeal is whether a post-test correction of the written information on Form 106–I is such a deviation from the State Toxicologist's approved method so as to invalidate the intoxilyzer test.

This appeal is governed by the provisions of the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C. Pursuant to that chapter, we examine the record of the administrative agency rather than the findings of the district court. *Greaves v. N.D.*

---

**1.** As counsel for Heinrich acknowledged during oral arguments, there was no dispute that the simulator number that Lt. Fischer wrote on the form correctly identified the simulator that tested Heinrich's blood-alcohol content.

*State Highway Com'r*, 432 N.W.2d 879, 881 (N.D.1988). In *Greaves*, we stated that our review of agency decisions is limited and involves the following analysis:

"(1) Is the decision of the agency in accordance with the law? (2) Is the decision of the agency in violation of the appellant's constitutional rights? (3) Have the provisions of Chapter 28–32 been complied with? (4) Was the appellant given a fair hearing? (5) Are the findings of fact supported by a preponderance of the evidence? (6) Are the conclusions of law sustained by the findings of fact? (7) Is the agency decision supported by the conclusions of law? See Sec. 28–32–19, N.D.C.C. See also *Dodds v. North Dakota State Highway Com'r*, 354 N.W.2d 165 (N.D.1984)."

When we review an administrative agency decision, we consider whether the agency could have reasonably reached its factual determinations by the greater weight of all the evidence. *Domek v. N.D. State Personnel Bd.*, 430 N.W.2d 339, 340 (N.D.1988). Despite the fact that we only review the record compiled by the agency, the analysis of the district court is entitled to respect if the analysis is sound. *Domek, supra*, 430 N.W.2d at 340.

In this case, Heinrich supports his position by citing several recent North Dakota cases in which we have held that absent testimony by the State Toxicologist, a party establishing the fair administration of an intoxilyzer test for purposes of reliability and accuracy must prove that all of the requirements of the statute have been "scrupulously" met. *State v. Schwalk*, 430 N.W.2d 317, 323 (N.D.1988); *Moser v. North Dakota State Highway Com'r*, 369 N.W.2d 650, 654 (N.D.1985). *See also Schirado v. North Dakota State Highway Com'r*, 382 N.W.2d 391, 392 (N.D.1986).

As we stated in *Schwalk, supra*, 430 N.W.2d at 323, "when the State Toxicologist has established methods and procedures for conducting the requisite test, fair administration can be established only by proof that those methods were 'scrupulously' complied with or by expert testimony."

However, the instant case is distinguishable from the *Schwalk, Moser*, and *Schirado* line of case law. Unlike *Schwalk, supra* [failure to establish compliance with State Toxicologist's directions for collection and submission of blood samples], *Moser, supra* [failure to start breathalyzer test at zero], or *Schirado, supra* [failure to follow State·Toxicologist's Approved Method for administering intoxilyzer test after printing malfunction], this case involves a purported deviation from the State Toxicologist's Approved Method which in no way could have affected the reliability and accuracy of the test results.

In a somewhat analogous case which involved a discrepancy in the serial numbers identifying the simulator used during an intoxilyzer test, we stated that "we fail to see under these circumstances what possible effect the discrepancy in the serial numbers could have had on the validity of the test results." *Schense v. Hjelle*, 386 N.W.2d 888, 891 (N.D.1986).

Likewise in this case, we fail to see how the post-test correction by Lt. Fischer of the standard solution number could have in any way affected the accuracy and reliability of the test results. However, from this opinion, we do not encourage or indicate a future inclination to condone any deviations from the State Toxicologist's approved method. We are merely stating that in this case the deviation could not have substantively affected the test results.

Therefore, pursuant to our standard of review, we find that the Commissioner could have reasonably reached his factual determination that Lt. Fischer's deviation did not affect the test results by the greater weight of the evidence. Accordingly, we reverse the district court judgment and affirm the Commissioner's decision.

ERICKSTAD, C.J., and LEVINE, MESCHKE and VANDE WALLE, JJ., concur.