Kathy A. LONG, Plaintiff
and Appellant,

v.

Jeffrey LONG, Defendant and Appellee.

Civ. No. 880196.

Supreme Court of North Dakota.

April 19, 1989.

McConn, Fisher, Olson & Daley, Grand Forks, Richard W. Olson, for plaintiff and appellant, submitted on briefs.

Kevin B. Spaeth, Grand Forks, for defendant and appellee, submitted on briefs.

LEVINE, Justice.

The question presented is whether a district court in North Dakota has subject-matter jurisdiction to modify child custody where the parents and children do not reside in North Dakota and another State has declined to exercise jurisdiction because of North Dakota's assertion of jurisdiction. We hold that the district court in North Dakota was without jurisdiction and we therefore vacate the second amended judgment and remand with directions.

Kathy A. Long and Jeffrey Long were divorced on August 23, 1979. Kathy was awarded custody of their two children and Jeffrey was awarded reasonable visitation. Immediately following the divorce, Kathy and the children moved to Minnesota where they have resided continuously. Jeffrey has not lived in North Dakota since 1980.

On December 12, 1985, Jeffrey brought a motion for contempt in the Northeast Central District Court in Grand Forks, North Dakota, requesting the court to find Kathy in contempt for her failure to allow visitation. In response, Kathy requested the court to deny or restrict Jeffrey's visitation, alleging that Jeffrey and his wife sexually abused the children during an overnight visit.

On August 6, 1986, after a hearing, the trial court amended the original divorce decree. The trial court found that it had jurisdiction over the subject matter and the parties and stated that "it is the intent of this Court to retain custody." The trial court allowed Jeffrey unsupervised visitation at his mother's house in Minnesota and stated that the district court of Ramsey County, Minnesota, is "entrusted to the restoration of parental relationship and visitation" and is to report to the North Dakota court. Apparently, neither party contested the court's jurisdiction to modify the divorce decree and no appeal was taken.

On March 16, 1987, Jeffrey again moved for modification in the Northeast Central District Court. Jeffrey alleged that Kathy continued to deny visitation and he requested custody of the children with permission to move them to his home in Mississippi. In response, Kathy requested a stay of proceedings on the grounds that the district court was an inconvenient forum and it should decline jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), NDCC ch. 14–14.

Approximately a month later, Kathy filed a motion in the district court of Ramsey

County, Minnesota, requesting that court to take jurisdiction under the UCCJA and award her sole legal and physical custody and ascertain Jeffrey's visitation rights. After a hearing, a referee for the Minnesota court recommended that Kathy's motion be denied, finding that North Dakota had jurisdiction and had not declined to exercise that jurisdiction. The referee's order was approved by the Minnesota district court and the proceedings were dismissed. Kathy moved for a review and reversal of the order. The district court for Ramsey County, Minnesota, confirmed the order dismissing the proceedings.

On May 2, 1988, after a hearing, the Northeast Central District Court acted on Jeffrey's motion and amended the divorce decree a second time. The court determined that it had jurisdiction over the parties and subject matter and it restored visitation to Jeffrey to be enforced by the district court for Ramsey County, Minnesota. Kathy appeals from the second amended judgment.

Kathy contends that the Northeast Central District Court was without jurisdiction to modify the second amended judgment. We agree.

This case involves an interstate custody dispute. Before a court can proceed to the merits of the interstate custody dispute, it must first determine whether it has jurisdiction pursuant to the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A,[1] and the Uniform Child Custody Jurisdiction Act (UCCJA), NDCC ch. 14–14.[2] *Dahlen v. Dahlen*, 393 N.W.2d 765, 767 (N.D.1986). In *Dahlen*, we held that under the PKPA and UCCJA, a court has continuing jurisdiction to modify a custody determination if the state is the residence of the children or of a contestant. *Dahlen, supra* at 768 (interpreting the PKPA, 28 U.S.C. § 1738A(d) [*see* n. 1] and UCCJA, NDCC § 14–14–03 [*see* n. 2]).[3]

It is undisputed that neither the children nor either contestant live in North Dakota. Kathy and the children have resided in

---

1. The continuing jurisdiction provision of the PKPA, 28 U.S.C. § 1738A(d), provides:

"(d) The jurisdiction of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant."

Subsection (c)(1) provides:

"(c)(1) A child custody determination made by a court of a State is consistent with the provisions of this section only if—
(1) Such court has jurisdiction under the law of such State...." 28 U.S.C. 1738A(c)(1)

2. The relevant subsection of the UCCJA, NDCC § 14–14–03(1), reads as follows:

"1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial decree or modification decree if:
a. This state (1) is the home state of the child at the time of commencement of the proceeding, or (2) has been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or detention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;
b. It is in the best interest of the child that a court of this state assume jurisdiction because (1) the child and his parents, or the child and at least one contestant, have a sig-

nificant connection with this state, and (2) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
c. The child is physically present in this state and (1) the child has been abandoned or (2) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected, dependent, or deprived; or
d. (1) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision a, b, or c, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (2) it is in the best interest of the child that this court assume jurisdiction."

3. Section 14–05–22, NDCC, provides that the trial court may modify its custody determination in accordance with the provisions of chapter 14–09, NDCC, which sets forth factors used in determining the best interest of the children. We noted in *Dahlen v. Dahlen*, 393 N.W.2d 765, 766–67 n. 1 (N.D.1986), that although this section gives the trial court the continuing power to modify custody, it does not vest the trial court with jurisdiction. A trial court retains jurisdiction to modify custody as provided in the PKPA and UCCJA.

Minnesota since the divorce in 1979, and Jeffrey has lived outside North Dakota since 1980. Therefore, pursuant to *Dahlen,* North Dakota no longer has jurisdiction to modify the custody decree.

However, Jeffrey argues that even if North Dakota does not have jurisdiction under the PKPA and UCCJA, North Dakota has jurisdiction because Minnesota acceded to North Dakota's jurisdiction. We disagree.

The district court for Ramsey County, Minnesota, declined to exercise its jurisdiction and dismissed the proceedings in Minnesota based upon the parties' prior acquiesence to the exercise of jurisdiction by North Dakota and the North Dakota court's expressed intent to retain jurisdiction. The Minnesota court determined that although Minnesota did have jurisdiction, the purposes and principles embodied in the UCCJA "would best be served by deferring to North Dakota's exercise of its jurisdiction. Simultaneous proceedings in two different states would not serve the best interests of the children." The court found that "North Dakota appears to have jurisdiction."

In amending the judgment a second time, the Northeast Central District Court in Grand Forks County, North Dakota, explained that "[a]fter communication between the respective courts Minnesota acceded to the continuation of North Dakota jurisdiction despite the fact that both parties had removed their residence from North Dakota." The court concluded that it had jurisdiction to modify custody and would retain jurisdiction.

■ Subject-matter jurisdiction is derived from the constitution and the laws, *Reliable, Inc. v. Stutsman County Commission,* 409 N.W.2d 632, 634 (N.D.1987),

and cannot be conferred by agreement, consent or waiver. *Id.; State v. Tinsley,* 325 N.W.2d 177, 179 (N.D.1982). The PKPA and the UCCJA specifically set forth the jurisdictional requirements to modify a custody determination, and neither confers jurisdiction by stipulation, agreement or consent of the parties or the court.[4] *See* 28 U.S.C. § 1738A(d) [*see* n. 1]; NDCC § 14–14–03 [*see* n. 2]. *See also State ex rel. Laws v. Higgins,* 734 S.W.2d 274, 279 (Mo.Ct.App.1987); *In re Marriage of Hopson,* 110 Cal.App.3d 884, 168 Cal.Rptr. 345, 351 (1980); *Campbell v. Campbell,* 180 Ind.App. 351, 388 N.E.2d 607, 608 (1979). Therefore, we conclude that North Dakota did not have jurisdiction to modify the custody determination because of any prior acquiesence to the exercise of jurisdiction or the Minnesota court's consent to North Dakota's jurisdiction in this case.

Jeffrey next argues that North Dakota has jurisdiction to modify the custody determination under the PKPA, 28 U.S.C. § 1738A(c)(2)(D), which grants North Dakota jurisdiction to modify the custody determination if "another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child...."

It has been held that § 1738A(c)(2)(D) applies only if no other state has jurisdiction under the "home state" sections of the PKPA [§ 1738A(c)(2)(A) ]. *Caronna v. Caronna,* 141 Misc.2d 834, 535 N.Y.S.2d 312, 313 (N.Y.Fam.Ct.1988); *E.E.B. v. D.A.,* 89 N.J. 595, 446 A.2d 871, 879 (1982). However, there are two reasons we need not decide whether § 1738A(c)(2)(D) applies.

First, the Minnesota court did not decline to exercise its jurisdiction on the ground that North Dakota is the more appropriate

---

**4.** Both the PKPA and UCCJA protect against jurisdictional competition and conflict that results from simultaneous proceedings in two states. The PKPA provides that:

"A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination."

28 U.S.C. § 1738A(g). *See also* NDCC § 14–14–06(1). In this limited sense, a court of another state may agree to this State's exercise of jurisdiction, provided this State has jurisdiction in accordance with the UCCJA and PKPA. *Compare Vande Hoven v. Vande Hoven,* 399 N.W.2d 855 (N.D.1987) [California declined to exercise jurisdiction because North Dakota was the more appropriate forum; North Dakota assumed jurisdiction pursuant to PKPA and UCCJA].

forum. Rather, it stated as its reasons for not exercising jurisdiction, the desire to avoid jurisdictional competition and the conflict that results from simultaneous proceedings in two states. Second, there is no doubt that North Dakota is not the more appropriate forum to modify custody in this case. In determining whether a state is the more appropriate forum, we apply the factors enumerated by the UCCJA, NDCC § 14–14–07, for determining whether the state is an inconvenient forum.[5] *Caronna v. Caronna, supra; E.E.B. v. D.A., supra.* Since the divorce in 1979, North Dakota has maintained no connection with the children or either contestant. Minnesota is the home state of the children and a contestant, and has been for the past nine years. There is substantial evidence concerning the children's present and future care, protection, training and personal relationships in Minnesota. Minnesota has the only connection with the children and one of the parents. We thus reject Jeffrey's argument that § 1738A(c)(2)(D) confers jurisdiction.

Jeffrey also asserts that a similar provision of the UCCJA, NDCC § 14–14–03(1)(d)(1), grants North Dakota jurisdiction to modify a child custody determination if "another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child." Because Minnesota did not decline to exercise its jurisdiction on the ground North Dakota is the more appropriate forum, and North Dakota is clearly not the more appropriate forum to modify the custody determination,

we reject Jeffrey's argument that NDCC § 14–14–03(1)(d)(1) confers jurisdiction. We hold that the Northeast Central District Court was without jurisdiction to modify custody in the second amended judgment.

Although North Dakota is without jurisdiction, and Minnesota has declined to exercise its jurisdiction, the parties are not without a remedy. In its opinion dismissing the proceedings on July 29, 1987, the district court for Ramsey County, Minnesota, stated that "[t]his court will exercise its jurisdiction if North Dakota finds it does not now have jurisdiction...." The Minnesota court recognized that it had jurisdiction. Minnesota is the proper forum to modify the custody decree. *See* 28 U.S.C. § 1738A(f) (under PKPA the Minnesota court may modify a custody determination made by North Dakota if it (1) has jurisdiction, and (2) North Dakota no longer has jurisdiction or declines to exercise jurisdiction); NDCC § 14–14–14 [similar provision in UCCJA].

Accordingly, we vacate the second amended judgment and remand with directions that the trial court enter an order denying the motion to modify the judgment for lack of jurisdiction.[6]

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

---

5. The UCCJA, NDCC § 14–14–07(3), lists the following factors to be applied in determining whether the state is an inconvenient forum:

"a. Another state is or recently was the child's home state;

"b. Another state has a closer connection with the child and his family or with the child and one or more of the contestants.

"c. Substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

"d. The parties have agreed on another forum which is no less appropriate; and

"e. The exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 14–14–01."

For an analysis of this section, *see Dennis v. Dennis,* 387 N.W.2d 234 (N.D.1986).

6. As to the first amended judgment of August 6, 1986, apparently neither party contested the court's jurisdiction to modify the divorce decree, and there was no appeal. On this appeal from the second amended judgment, neither party raises the issue of whether the first amended judgment is void because of the trial court's apparent lack of jurisdiction. While we recognize it is the duty of this court to raise jurisdictional issues sua sponte whenever they appear on the record, *Dahlen v. Dahlen,* 393 N.W.2d 765, 767 (N.D.1986), we prefer to proceed cautiously and leave the parties to their remedy under NDRCivP 60(b)(iv).